## Court of Appeals.

November 28, 1893.

## PEOPLE v. GEORGE ALBOW.

(55 St. Rep. 253; 140 N. Y. 130.)

1. Criminal law—Green goods.

> The selling or offering to sell counterfeit money or tokens of value, or what purports to be such, or the aiding or abetting any scheme or device having for its purpose the sale or the putting in circulation of counterfeit money or tokens, or what purports to be such, is the offense alone at which section 527 of the Penal Code is aimed, and it has no reference to any other frauds upon the public or individuals.

2. Indictment—Green goods.

> An indictment, under section 527 of the Penal Code, which does not contain an averment that the scheme was to sell or exchange, or to offer to exchange, "counterfeit" money, or what purported to be such, is fatally defective.

3. Criminal law—Inferences.

> A criminal charge may be and often is supported by inference from facts which imply the existence of the principal facts constituting the offense.

Appeal from judgment of the supreme court, general term, second department, affirming judgment of the Dutchess county court of sessions, entered upon conviction of defendant for a

violation of section 527 of the Penal Code, in that he aided and abetted in a green goods scheme.

Daniel O'Connell, for appellant.

Horace D. Hufcut, for respondents.

ANDREWS, Ch. J.—We think the indictment is fatally defective in that it does not allege the commission of the offense created by section 527 of the Penal Code. The section is entitled "Advertising Counterfeit Money," and the purpose of the enactment was to reach the nefarious business of offering or pretending to offer for sale counterfeit money, and inducing people, by what is popularly known as the "green goods" scheme, or similar devices, to invest their money, receiving in return either counterfeit money, or packages purporting to contain counterfeit money, but which in fact contained blank paper, or something of like character.

The selling or offering to sell counterfeit money or tokens of value, or what purports to be such, or the aiding or abetting any scheme or device having for its purpose the sale or the putting in circulation of counterfeit money or tokens, or what purports to be such, is the gravamen of the offense. It is that offense alone at which the statute is aimed, and it has no reference to any other frauds upon the public or individuals.

The indictment alleges that the defendant aided and abetted a scheme for offering for sale or exchange "green goods" by means of circulars and letters, and that thereby Cassell and Hogshead were induced to come to Poughkeepsie, in this state, to deal with the defendant; that the defendant there stated to Cassell and Hogshead that he would take them to an old gentleman in New York, "who had one hundred thousand dollars like a one-dollar greenback, so called, being a treasury note issued by the government of the United States;" that defendant showed Cassell the good one-dollar note, and told him that he could exchange one hundred dollars of his money with the "old gentleman" for one thousand dollars of the old gentleman's money, which was as good as the one-dollar bill shown; that the defendant asked Cassell to go with him to the city of

New York "to get said money of the old gentleman, which said money said Albow called and designated as goods," etc.

There is no averment in the indictment that the scheme which the defendant abetted was to sell or exchange, or to offer to sell or exchange, "counterfeit" money, or what purported to be counterfeit money, and there is no reference whatever in the indictment to that purpose. The offense stated in the statute is not averred. If the facts stated in the indictment were established the jury would undoubtedly infer that it was a scheme to exchange real or pretended counterfeit money for good money. But this would be an inference from the improbability that any other purpose was in the mind of the defendant. A criminal charge may be and often is supported by inferences from facts which imply the existence of the principal facts constituting the offense. But the principal fact must be charged in the indictment. It is not sufficient to allege the facts from which an inference of the principal fact may be drawn, without charging the principal fact.

The settled rule of criminal pleadings requires that all the elements which enter into the definition of an offense must be stated in the indictment. The strictness which formerly prevailed in respect to unessential matters in indictments, which often defeated the ends of justice, has been properly relaxed. But the rule that the offense must be charged in plain and intelligible language, and that the indictment must set forth all the essential elements of the crime, is and ought to be preserved alike for the protection of the accused and in the interest of the certain and orderly administration of the criminal law. It was said by Mr. Justice Field, in United States v. Hess, 124 U. S. 483, in the case of an indictment under a statute of the United States for a fraudulent use of the mails, where essential facts were not averred, "no essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by the intendment or implication, and the charge must be made directly and not inferentially, or by way of recital." This is a sound exposition of the principle governing criminal pleadings, which was disregarded in framing the indictment in the present case.

For the reason that the indictment does not charge the of-

fense described in the statute, the conviction should be reversed.

Judgment reversed.

All concur.